IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                        CIVIL ACTION NO. 3:08-0892
                                        (CRIMINAL ACTION NO. 3:08-0032)

$20,560, MORE OR LESS,
IN UNITED STATES CURRENCY,

        Defendant,

MARCUS D. AND BRANDY DIXON,

        Interested Parties.

**MEMORANDUM OPINION AND ORDER
AND FINAL ORDER OF FORFEITURE**

Pending before the Court is the Government's Motion for Summary Judgment and for a Final Order of Forfeiture [doc. no. 18], and a Motion for Return of Personal Property by Marcus D. Dixon, as an interested party [doc. no. 16; doc. no. 75 in criminal action no. 3:08-0032]. For the following reasons, the Court **GRANTS** the Government's motion and **DENIES** Mr. Dixon's motion.

**I.
FACTS**

On May 12, 2008, Mr. Dixon pled guilty to possession with intent to distribute fifty grams or more of crack cocaine. On September 2, 2008, this Court held a sentencing hearing at which Mr. Dixon objected to $20,560 in cash found during a search of his house being used to

determine his Guideline range. The Court rejected Mr. Dixon's argument and sentenced him to 140 months of imprisonment, five years supervised release, and a $100 special assessment. The Government now seeks a forfeiture of that money, and Mr. Dixon moves to have $11,300 of those funds returned to him.

At the guilty plea and sentencing hearings, DEA Special Agent Tom Bevins testified he had conducted two controlled buys from Mr. Dixon. At the sentencing hearing, Agent Bevins stated the first controlled buy was for a half of an ounce of crack cocaine for $650. The second controlled buy was for an ounce of crack for $1,300. He further said that he made arrangements to purchase another two ounces of crack on January 14, 2008, on the same day they obtained a search warrant and searched Mr. Dixon's residence.

Agent Bevins testified at the plea hearing that during the search the officers found a total of 109.7 grams of crack in the master bedroom closet and behind a cushion in the television room and approximately $20,000 in cash. At the sentencing hearing, Agent Bevins explained the money was found in a plastic freezer bag, hidden in a love seat in the bedroom.[1] The money was wrapped with rubber bands in $1,000 increments, with a variety of denominations of bills in each bundle. Based upon his experience, Agent Bevins stated that the manner in which the money was wrapped was consistent with what was done in the drug trade. He also said none of the controlled buy money was found in the money confiscated during the search.

---

[1]Officers also found $560 on Mr. Dixon's person.

At the sentencing hearing, Mr. Dixon's mother testified that the family had taken up collections for Mr. Dixon and his wife Brandy to buy their house. She said she presented them with $5,300 in cash at Thanksgiving of 2007. In addition, she stated that Mr. Dixon's uncle gave them $6,500 or $7,000 from a personal injury settlement his uncle had obtained.[2] Therefore, Mr. Dixon argued at the sentencing that those funds should not be converted to its crack cocaine equivalent. Upon consideration, the Court disagreed.

In its findings, this Court found the Government had met its burden. In doing so, the Court noted that the way in which the money was packaged and hidden, the fact Mr. Dixon had taken in almost $2,000 in controlled buys within ten days of the search, and the fact the search also yielded a significant amount of crack, all indicated the funds were most likely drug proceeds. Although it was possible Mr. Dixon and his wife received some money from his mother and uncle, the Court stated that, even if that money was not converted to a crack equivalent, there was a significant amount of additional money in the bag which was unexplained and it clearly was not saved from the limited legitimate income the couple had earned. In addition, in any event, the unexplained amount of money was enough to push Mr. Dixon into the next offense level. Therefore, the Court denied Mr. Dixon's objection.

On appeal, the Fourth Circuit in a per curiam opinion affirmed this Court's decision and found "no clear error in the district court's determination that the currency found hidden in the loveseat was attributable to Dixon's drug trafficking activities." *United States v. Dixon*, No.

---

[2]Mr. Dixon states he received $6,000 from his uncle.

08-4925, 322 Fed. Appx. 348 (4th Cir. April 17, 2009) (unpublished). The Fourth Circuit recognized "[t]he $20,000 was packaged in a manner similar to that used by persons in the drug trade, it was hidden inside furniture, and it was implausible, given their income, that Dixon and his wife could save up that substantial sum from their limited income with the expenses any normal family would have." *Id.* (internal quotation marks omitted).

In this action, the Government seeks a Final Order of Forfeiture of the entire amount. Mr. Dixon and his wife Brandy oppose the motion and Mr. Dixon filed his own motion for the return of $11,300. Attached to their Memorandum in Opposition are four affidavits. The first affidavit is from Mr. Dixon in which he states he received $5,300 from his mother and $6,000 from his uncle. The second affidavit is from Brandy Dixon in which she attests to the same and claims a half interest in the money. The third affidavit is from his mother in which she states she gave the couple $5,300 in cash, and the fourth affidavit is from his uncle who states he gave the couple $6,000 in cash.

## II.
## DISCUSSION

To obtain summary judgment, the moving party must show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Fed. R. Civ. P.* 56(c). In this case, it is the Government's initial burden to show "the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Rule 56(c)). "[T]he mere existence of *some* alleged factual dispute between the parties will not

defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

Pursuant to he Civil Asset Forfeiture Reform Act of 2000 ("CAFRA"), 18 U.S.C. § 983(c)(1), the Government must demonstrate by a preponderance of the evidence that the property sought is subject to forfeiture.[3] Furthermore, § 983(c)(3) provides that "if the Government's theory of forfeiture is that the property was used to commit or facilitate the commission of a criminal offense, or was involved in the commission of a criminal offense, the Government shall establish that there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3). In order to meet its burden, "the Government may use evidence gathered after the filing of a complaint . . . ." 18 U.S.C. § 983(c)(2).

Upon review of the facts of this case, the Court finds the Government has met its burden. Although Mr. Dixon has submitted affidavits that he and his wife received $11,300 in gifts, the affidavits do little to advance their position beyond the evidence the Court considered at the sentencing hearing. Mr. Dixon did not submit anything to verify or support the affidavits, such as a bank statement from his uncle showing a withdrawal of $6,000 in cash.

Moreover, even if the Court were to find that Mr. and Mrs. Dixon received money from family members, it is clear that Mr. Dixon co-mingled those funds with money he used to facilitate his drug trade. Both the money he claims was a gift and the money from his drug

---

[3]CAFRA applies to all forfeiture cases filed after August 23, 2000.

trafficking business were found in the same plastic bag, hidden in a love seat, and all of it was wrapped with rubber bands consistent with the way cash is bundled in the drug trade. There was no way to distinguish the purported "gift" money from the drug money and, given that Mr. Dixon was involved in selling considerable amounts of crack out of his house, the Court has no doubt that the money was being used interchangeably. In light of this evidence, the Court has no difficulty finding that the Government has met its burden under § 983(c)(3) that "there was a substantial connection between the property and the offense." 18 U.S.C. § 983(c)(3), in part.

Likewise, the Court finds no merit to any claim by Mrs. Dixon that she is an innocent owner of the money. Pursuant to § 983(d), Mrs. Dixon has the burden to show by a preponderance of the evidence that she is an innocent owner.[4] "With respect to a property interest in existence at the time the illegal conduct giving rise to forfeiture took place," an innocent owner is defined as an owner who (i) did not know of the conduct giving rise to forfeiture; or (ii) upon learning of the conduct giving rise to the forfeiture, did all that reasonably could be expected under the circumstances to terminate such use of the property." 18 U.S.C. § 983(d)(2)(A)(i) and (ii). A person who claims to be an innocent owner may show he or she fulfilled the requirement of

---

[4]Section 983(d)(1) provides:

> **(d) Innocent owner defense.--**
>
> **(1)** An innocent owner's interest in property shall not be forfeited under any civil forfeiture statute. The claimant shall have the burden of proving that the claimant is an innocent owner by a preponderance of the evidence.

18 U.S.C. § 983(d)(1).

subparagraph (ii) if he or she "gave timely notice to an appropriate law enforcement agency of information that led the person to know the conduct giving rise to a forfeiture would occur or has occurred; and . . . in a timely fashion revoked or made a good faith attempt to revoke permission for those engaging in such conduct to use the property or took reasonable actions in consultation with a law enforcement agency to discourage or prevent the illegal use of the property."[5] 18 U.S.C. § 983(d)(2)(B)(i).

Mrs. Dixon makes a cursory statement in her affidavit that she had no knowledge her husband was dealing drugs out of their residence. Although there is no evidence in this case that Mrs. Dixon was involved in Mr. Dixon's drug trafficking, it is clear he was actively dealing and storing a considerable amount of drugs and money in their residence. Mrs. Dixon states she knew about the money and consented to her husband storing it in a bag in the love seat in their bedroom, but she claims all the money was from legitimate sources, gifts, earned income, and tax returns. As stated by this Court at the sentencing hearing, however, the evidence shows it is highly implausible that Mr. and Mrs. Dixon would have been able to save such a large amount of money given their very limited income and their normal living expenses for themselves and their four children. In addition, officers confiscated scales and other drug paraphernalia during the search, and Mr. Dixon was already on home confinement for a previous state conviction for drug distribution. Given these facts, the Court finds it very difficult to believe Mrs. Dixon did not know

---

[5] An innocent owner is not required "to take steps that the person reasonably believes would be likely to subject any person (other than the person whose conduct gave rise to the forfeiture) to physical danger." 18 U.S.C. § 983(d)(2)(B)(ii).

about her husband's illegal activities, and the Court finds she has failed to show by a preponderance of the evidence that she is an innocent owner under § 983(d)(2)(A)(i). Likewise, there is no evidence she took any steps under subsection (ii) to terminate the illegal use of the money. *See, e.g., United States v. One Parcel of Property Located at 755 Forest Road*, 985 F.2d 70, 72 (2d Cir. 1993) (stating "where an owner has engaged in 'willful blindness' as to activities occurring on her property, her ignorance will not entitle her to avoid forfeiture" (citation omitted)). Thus, the Court finds Mrs. Dixon is not entitled to any of the funds.

### III.
### CONCLUSION

Accordingly, for the foregoing reasons, the Court **DENIES** Mr. Dixon's Motion for Return of Personal Property Pursuant to Rule 41(g) [doc. no. 16; doc. no. 75 in criminal action no. 3:08-0032] and **GRANTS** the Government's Motion for Summary Judgment [doc. no. 18] and **ISSUES** a Final Order of Forfeiture to the Government in the amount of the $20,560, more or less in United States currency, free and clear of any adverse right, title or interest.

The Court **DIRECTS** the Clerk to send a copy of this written Opinion and Order to counsel of record and any unrepresented parties.

ENTER: September 13, 2010

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE